### STETSON et al. v. HERRESHOFF MFG. CO. et al.

(Circuit Court, D. Rhode Island. February 17, 1902.)

#### No. 2,573.

1. PATENTS—SCOPE OF INVENTION—LIMITATION BY NAME.

  Where an inventor has made and patented a thing which is novel, but which performs in part the functions of each of two old structures, his selection of the name of one of them for his invention, as being approximately descriptive, should not be held a limitation which deprives him of the right to protection, save as to the features of his invention which are appropriately described by such name; nor, on the other hand, can he escape anticipation by a prior structure because it was given a different name, where the functions of the two are substantially the same.

2. SAME—ANTICIPATION—SHIPS' KEELS.

  The McIntyre patent, No. 393,713, for a ship's keelson, was anticipated by patent No. 367,828, to the same patentee, for a box keel, which describes a keel formed of a single piece of cast metal, while the later patent describes substantially the same structure, divided into sections for convenience of handling in the construction of larger vessels, the sections having end walls integral with the sides and bottom, by means of which they are bolted together when in place; the change being one which does not involve invention.

In Equity. Suit for infringement of letters patent No. 393,713, for a ship's keelson, granted November 27, 1888, to James McIntyre, assignor of one-half to John A. Stetson. On final hearing.

J. E. Maynadier, for complainants.

Walter H. Barney and Francis Colwell, for defendants.

BROWN, District Judge. This suit is for infringement of letters patent No. 393,713, dated November 27, 1888, to James McIntyre, assignor of one-half to John A. Stetson, for a "ship's keelson." The defenses are invalidity and noninfringement.

The first and fourth claims only are in suit:

"(1) In a vessel, the compound keelson herein described, made up of two or more separate sections, the side and end walls of which are integral, the

sections being secured together end to end, substantially as and for the purpose set forth."

"(4) In a vessel, the compound keelson herein described, made up of two or more separate sections, the end and side walls of which are integral, the sections being secured together end to end, and provided with one or more crosspieces to sustain the ribs, substantially as and for the purpose set forth."

The specification states:

"My invention consists, mainly, in a keelson made up of sections, each having one or more cross walls which are integral with its side walls, the sections being secured together end to end. * * * The sections are secured together end to end by fastenings, d, some of which consist of bolts and nuts, while others consist of clamps and keys, as shown."

A considerable amount of evidence and of argument is devoted to distinctions between a "keel" and a "keelson." Many definitions are quoted; but the distinction is pointed out sufficiently, for the purposes of this case, in the definition from the Century Dictionary:

"Keel. * * * (2) The principal timber in a ship or boat, extending from stem to stern at the bottom, supporting the whole frame, and consisting of a number of pieces scarfed together and bolted together; in iron vessels, the combination of plates corresponding to the keel of a wooden vessel.

"Keelson, Kelson. A line of jointed timbers in a ship laid on the middle of the floor timbers over the keel, fastened with long bolts and clinched, thus binding the floor timbers to the keel; in iron ships, a combination of plates corresponding to the keelson timber of a wooden vessel."

From the specification, it would seem that the structure of the patent was intended to be used in connection with a wooden keel or a keel plate. The specification says: "Of course, keel, E, may be dispensed with, if desired, in which case keel plate, D, is the keel."

Nevertheless, if we regard structural considerations, the connected sections of cast metal, called by the patentee a "compound keelson," are more analogous to the keel of an ordinary ship than is the keel plate, D, since the connected sections extending from stem to stern are the principal members of the backbone of the ship, and the keel plate, D, does not, by itself, perform the function of an ordinary keel, though it may perhaps be called a "keel" because it is at the bottom of the ship. But this case should turn upon a consideration of the patentee's structure, rather than upon distinctions between the words "keel" and "keelson," since the patent, read as a whole, clearly describes and claims the thing which the patentee desires to cover, as well as the function it is to perform.

The complainants' departure from older forms of construction has resulted in a structure to which neither the word "keel" nor the word "keelson," as defined, is strictly applicable. It would seem from the specification that the patentee intended to use his structure in conjunction with a wooden keel, or with a keel plate; but it is by no means apparent that it is impractical for use without a keel or keel plate, and the keel or keel plate is not described or claimed as a part of the patented structure.

Whether or not the defendants infringe cannot, in my opinion, be determined by considering whether the defendants use anything corresponding to the keel plate or keel, shown, but not claimed, in the patent. If the structure is patentable as a keel, the patent would prob-

ably be infringed by using it for a keelson, and if it is patentable as a keelson it would probably be infringed by use as a keel, since the keel and keelson have a common function as co-operating parts of the ship's backbone.

I am further of the opinion that the patentee's use of the word "keelson," upon the suggestion of the patent office that this was a more appropriate word than "keel," does not amount to a voluntary limitation of the patent to the structure used in conjunction with a keel plate or wooden keel. The structure shown in the patent is the principal member of the ship's backbone. To call it a "keel" or a "keelson" does not make it otherwise.

It is by no means apparent that the examiner was correct in saying that this structure is a keelson, "as no other appears to be provided, and the part designated by the letter E is more properly the keel." It would seem that, in choosing between the two words, regard should have been had to the question whether the connected sections or the part, E, formed the principal structural member.

But it appears to me entirely immaterial whether the examiner's choice of words was correct or not, and the fact that the patentee acquiesced in the choice of words is also immaterial. While, in some cases, the voluntary choice of a name may well be regarded as imposing a limitation upon the thing or function which the patentee desires to cover, and an acknowledgment that the standard meaning of a word is an appropriate description and limitation of the thing claimed, such a doctrine is frequently abused and misapplied for the creation of verbal and meritless issues. When it appears that an art is advanced by a novel structure, which in some features resembles old and well-known things, and in other features differs from them, or which is intermediate of things respectively bearing different names, we should be slow to allow debatable implications, arising merely from the choice of a name, to override plain text and plain descriptions of things and functions.

An inventor makes a thing which is new. He must name it, and, as he cannot usually coin a new word, he must take an old one which fits it approximately. He may, like this inventor, find two old words about equally applicable, but neither of which is exactly descriptive of the invention. He chooses one. He might as well or better have chosen the other. His rights in a patent cause should not turn upon an assumption that he has thrown away all of what he describes except that which, in our opinion, is appropriately described by the general name he has chosen.

We will consider, then, whether the patent in suit discloses a patentable invention, by whatever name it may be called. The patent in suit makes reference to a prior patent, as follows:

"The keelson sections shown in the drawings are provided with cross-pieces, f, to sustain the ribs, f¹, as fully explained in my patent, No. 367,828, dated August 9, 1887, and the planking, f², is best secured to the ribs, as explained in that patent."

The prior patent describes, among other things:

"A box keel, formed with crosspieces forming pockets for the ribs. The ribs are bolted to these crosspieces, and a very solid and firm interior con-

nection is formed between the box keel and the ribs, without the need of bolt holes through the keel. After the ribs are in place, the spaces between the crosspieces may be filled with lead or ballast. This is very desirable for yachts. * * *" Also: "The box keel, D, is of cast metal, with or without the center-board box, E, and crosspieces, d, may be cast with the box keel, or otherwise connected to it."

Claim 2 of the prior patent reads as follows:

"(2) The box keel, D, formed of a continuous single piece of metal having crosspieces, d, at intervals to sustain the ribs, substantially as and for the purpose set forth."

Upon the complainants' brief it is conceded that the structure of the prior patent is for the same purpose as the structure of the later patent. The complainants, therefore, cannot escape anticipation by distinctions between a keel and keelson, and are not on this issue assisted by the fact that in his prior patent the patentee has claimed a box keel, and in the patent in suit a compound keelson. The considerations which are favorable to the complainants on the question of infringement must be given full force upon the question of anticipation and invention.

It is conceded that a vessel "with a foundation, which is a single casting with crosspieces to sustain the ribs," is a part of the prior art; that the fundamental idea in the prior patent is that the foundation or backbone of the vessel is a continuous single piece of metal, with crosspieces at intervals to sustain the ribs. It is contended that McIntyre, in his prior patent No. 367,828, advanced the art by teaching the construction of a new class of vessels,—that is, the class characterized by a buoyant body, mainly the ribs and skin, with the ribs held together by a single casting, forming the backbone of the vessel; and in the patent in suit, No. 393,713, he again advanced the art by teaching how that class of vessels could be constructed of much greater length than was before practical. The brief for the complainants summarizes as follows:

"Briefly, the patentee taught in his second patent that if the pattern for the cast backbone of his first patent were cut into two or three pieces, and a cross end wall added to the front end of the stern piece, a like cross end wall added to the rear end of the bow piece, and two like cross end walls added to the midship piece, the new result produced by uniting the castings from those new patterns by means of bolts through their cross end walls would be a new backbone for vessels which would be an important practical improvement over the cast backbone of his first patent."

The complainants submit that the question to be decided is whether that new backbone is an invention or not. It is important, at this point, to refer to the evidence of McIntyre, upon cross-examination:

"C. Q. I understand you to say that you consider your construction of keelson superior, because the end and side walls and crosspieces are cast integral with the bottom, and so dispense with the use of angle irons, bolts, and rivets. Do I understand you correctly? Ans. I do. C. Q. In other words, the more joints there are the more chance there is for something to give way, and so weaken or injure the vessel? Ans. Yes. C. Q. Your construction of the keelson in section is for convenience in construction and handling, and if it could be conveniently made in one section it would be preferable so to do, would it not? Ans. Yes. C. Q. Were vessels constructed with metal keels prior to the application for the patent in suit? Ans. Oh, yes.

C. Q. And these keels were frequently made up of a number of plates fastened together. Is that not so? Ans. Yes."

It is contended that invention resides—First, in the idea of cutting up the foundation member of the 1887 patent into cross sections; second, in the idea of cross end walls, one on the after part of the prow section, one on the forward part of the stern section, and two on the amidship section; and, third, in the idea of securing those sections end to end by means of the cross walls.

Box keels formed of plates of metal were old; and to make a structure by casting, rather than by welding or riveting, does not ordinarily constitute invention. Kilbourne v. W. Bingham Co., 1 C. C. A. 617, 50 Fed. 697, 703; Gardner v. Herz, 118 U. S. 180, 6 Sup. Ct. 1027, 30 L. Ed. 158; Hicks v. Kelsey, 18 Wall. 670, 21 L. Ed. 852; Hotchkiss v. Greenwood, 11 How. 248, 13 L. Ed. 683. But it is obvious that in the present case the complainant McIntyre cannot stand as the inventor of a box keel of cast metal, since his prior patent anticipates this. A cast box keel of metal being old, did it require invention to put three of these together? Or, to put it another way, did it require invention to cut one of these up into three sections, put end walls on the sections, and unite these three by bolting their ends together?

The only novelty shown on the complainants' theory of their patent is the division of an old device into three pieces, because it was impracticable to make or handle castings, such as those shown in the prior patent, of sufficient size for use in larger vessels. The compound feature of the construction is merely a weakness conceded to the exigencies of construction. The function of the compound structure is exactly that of the simple structure.

I am of the opinion that it was not invention to think of using three castings instead of one, and that to make the castings of such form that their ends could be bolted together was a mere mechanical change, involving no exercise of the inventive faculty, and the scantiest exercise of mechanical skill.

The question whether there is invention in the cast metal box keel of the prior patent, unless that patent be restricted to peculiar features, is not properly in this case; but, as it has been suggested that these defendants are indebted to McIntyre for features of their construction, it may be observed that twin keelsons of cast metal in box form were used by John B. Herreshoff, one of the defendants, in the yacht Triton, as early as 1872, 15 years before McIntyre's earlier patent. The keel construction of the Defender and Columbia is made up of three bronze castings, which are fastened together end to end by bolts through end flanges cast integral with the sections of the plate; to the crosspieces are bolted floor plates, a common feature in the construction of iron ships; and to these floor plates are attached the frames or ribs. This is an essentially different mode of construction from that exhibited in either of the patents of McIntyre.

McIntyre's box keel was formed with cross pieces forming pockets for the ribs. The ribs were bolted to these crosspieces, with the design of forming a very solid and firm interior connection between the box keel and the ribs. There is no such interior connection be-

tween the box keel and the ribs in the Herreshoff construction. The ribs do not go into pockets, but are sustained by floor plates.

McIntyre was not recognized by the patent office as the inventor of a keel made of cast metal. In his original application for the prior patent, a box keel formed of continuous metal was claimed. The examiner rejected the claim, saying: "A box keel formed of continuous metal is not new, but a box keel formed of a continuous single piece of metal is new, so far as the examiner is advised." The earlier patent was allowed because the keel was simple, and not compound, and, presumably, because of the special combination of ribs and cast rib pockets. The patent in suit can derive no validity from what is in the prior patent; but, on the contrary, the prior patent, in my opinion, is a complete barrier to the claim that the present patent discloses a patentable novelty.

There are other defenses of importance, which show, among other things, that the builders of the Columbia, many years before McIntyre's first application, used metal cast in box form to stiffen the backbone of a vessel, and that in constructing their yachts they drew only on the common and recognized stock of all persons skilled in metal construction, so far as the formation of this particular portion of their vessels is concerned. It is not necessary to decide whether McIntyre's patents were anticipated by the twin box castings used in the keelson of the Triton. He was, at least, anticipated in the use of cast metal of box form to strengthen the backbone of a ship, and was thus limited, at all events, to the use of metal castings for the particular purpose, and in the particular mode, shown in his patents.

The fact that the structure of the patent in suit has never been used by McIntyre during 13 years of the life of his patent would seem to offset the complainants' contention that the patented structure is of vast importance.

It may be of importance to the defendants to use metal castings of bronze, instead of wooden timbers or metal timbers, made of plates in box form; but it is not because their construction is a development of the ideas of McIntyre, but because cast metal is stronger than wood, and apparently better for this purpose than metal plates riveted together. They have an unquestioned right to use rectangular boxes of metal plate as structural elements, and they have the right, in common with all builders, to cast their metal structural parts if they prefer to do so, rather than to make them by welding or riveting, and they have a right to use such structural elements to strengthen the backbone of a ship. In all of this they precede McIntyre. The superior qualities of their yachts are not attributable to the way in which they have constructed this particular member, nor to the appropriation of any inventive idea disclosed in the patent in suit.

The bill will be dismissed.