### MINTON MFG. CO. et al. v. CONTINENTAL BRIAR PIPE CO., Inc.
### No. 99.

Circuit Court of Appeals, Second Circuit.
Dec. 6, 1937.

Abraham Sarasohn, of New York City (W. Lee Helms, of New York City, of counsel), for appellant.

Thomas J. Byrne and George D. Richards, both of New York City, for appellees.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge.

This is a suit for patent infringement brought by Minton Manufacturing Company, as owner, and S. M. Frank & Co., Inc., as exclusive licensee, of patent No. 1,919,959, issued to Paul H. Minton, July 25, 1933, on an application filed February 6, 1932. The patent is for a removable absorbent filter cartridge for pipes, cigarette holders and similar tobacco-smoking appliances. Claim 8, the only claim in suit, was held valid and infringed. It reads as follows:

"8. An absorbent filter cartridge for smoking appliances, comprising a body of absorbent material, and an external covering enveloping said body, said covering comprising substantially moisture proof and transparent cellulosic material, and means to secure said covering to said body, said covering being adapted to disclose the condition of the body consequent upon its use."

The specifications recite that the materials used in making the filter cartridge are, preferably, strips of unsized absorbent paper spirally wound to form the tubular body, and a strip of cellophane wrapped around the body and secured by any suitable adhesive or cement. They also recite that the cellophane wrapper, being substantially moisture-proof and transparent, retains within the body of the cartridge the tobacco tars and moisture absorbed by it—thereby preventing the adjacent walls of the pipe-stem from becoming wet and dirty—and permits the user to see when the cartridge needs changing and to remove it without soiling the fingers. The appellant contends that claim 8 is invalid for lack of invention.

The idea of an absorbent filter cartridge for smoking appliances did not originate with Minton. The Demuth cartridge was marketed in substantial quantities from about 1910 to 1915. It had an absorbent paper body and was covered with a paper wrapper secured by cement. The structure was identical with that called for by claim 8, except that the latter has substituted for the paper wrapper of Demuth a wrapper of "substantially moisture proof and transparent cellulosic material," i. e., cellophane. It is true that after about five years of popularity the Demuth cartridge disappeared from use. Perhaps it was just a fad which had run its course; perhaps, as the plaintiffs argue, it lost its appeal because of defects inherent in a paper wrapper; namely, the tendency to swell with moisture and to clog and make dirty the shank of the pipe into which it was inserted. However that may be, claim 8 adds nothing to the old Demuth cartridge except the moisture proof and transparent cellophane wrapper with the functions inherent in a wrapper possessing those qualities. No doubt it is an improvement over Demuth's paper-wrapped cartridge, but it is an improvement which was obvious as soon as moisture proof and transparent cellulosic material became available. Cellophane was the first material of this character and Minton recognized its utility for his purpose almost at once. Moisture proof cellophane was introduced by the DuPont Company about 1931 and was widely advertised for wrapping purposes, although not for the specific purpose of pipe cartridges. Within a year Minton applied for his patent. Thus the case presents the not infrequent situation where very shortly after there appeared an independently developed new material which would meet an old need, it was applied to that need. The defects in the Demuth cartridge were obvious—swelling with moisture, it had a tendency to clog and foul the pipe—and it was equally obvious that if one could find a suitable moisture proof wrapper these defects would be overcome. When such a substance did appear, we cannot think that it took inspiration ranking as invention to select it for this purpose. See Florsheim v. Schilling, 137 U.S. 64, 76, 11 S.Ct. 20, 34 L.Ed. 574; Gardner v. Herz, 118 U.S. 180, 192, 6 S.Ct. 1027, 30 L.Ed. 158; General Electric Co. v. Paramet Chemical Corp., 82 F.2d 280, 282 (C.C.A.2); Kemper-Thomas Co. v. J. P. Gordon Co., 67 F.2d 478, 479 (C.C.A.

6); Strom Manufacturing Co. v. Weir Frog Co., 83 F. 170, 175 (C.C.A.6).

It is true that the patented cartridge has had great commercial success. Nearly 100 million have been sold, and without any extraordinary advertising. We cannot know how much of that success should be attributed to features of the body of the filter, covered by claims 1 to 7 and not in suit, rather than to the cellophane wrapper. In any event commercial success cannot serve as a substitute for invention; and if the successful device appears shortly after some obstacle to its creation has been removed, its success must be jealously scrutinized. See Altoona Publix Theatres, Inc. v. American Tri-Ergon Corp., 294 U.S. 477, 487, 488, 55 S.Ct. 455, 459, 79 L.Ed. 1005; Ruben Condenser Co. v. Aerovox Corp., 77 F.2d 266, 268 (C.C.A.2); Kemper-Thomas Co. v. J. P. Gordon Co., 67 F. 2d 478, 480 (C.C.A.6). In our opinion claim 8 defines no invention and must be held invalid.

Decree reversed.