## Case No. 750.

BAILEY WASHING & WRINGING MACH. CO v. LINCOLN et al.

[4 Fish. Pat. Cas. 379;[1] Merw. Pat. Inv. 108.]

Circuit Court, D. Massachusetts. March, 1871.

PATENTS FOR INVENTIONS—PROCESS AND RESULT—LATER DISCOVERIES—MECHANICAL EQUIVALENTS.

1. Although an inventor may not be informed of the particular value of the material which he

employs, yet if he employs it no one else can patent its use in the same way by discovering its peculiar value.

2. Although one element of a combination may be old, and a subsequent inventor may have made in it an immaterial improvement, yet if he have combined it with other devices, he may hold the combination against those who have invented nothing, but have merely substituted the old element in the new combination.

3. A claim for a result, by whatever means obtained, or for a process, to whatever substance applied, which might be applicable to substances yet undiscovered, would be too broad.

4. In patents for a machine, a statement that the parts may be made of any suitable materials, means known materials. If it did not, one who should afterward discover a new material would have no right to make the machine.

5. A process or means would be extended beyond the real invention if they included later discoveries. But a machine is independent of such discoveries.

6. In a patent for a machine the patentee, by the phrase, "any suitable material," intends to point out that the arrangement or combination does not depend on the use of the precise material where others may serve the purpose.

7. Under the decision in Stimpson v. Woodman, [10 Wall. (77 U. S.)] 117, it would not be invention to combine a known tool with a known machine, if the combination required nothing beyond the ordinary skill of the mechanic.

8. In a doubtful case, it can not but exercise great influence on the determination that the defendants have obtained possession of an alleged prior machine and have not produced it.

9. A rubber roller covered with cloth is not the equivalent of a roller having an exterior surface of rubber.

10. Reissued letters patent of John Allender for "improved roller for expressing water from clothes," dated April 18, 1865, examined and sustained.

[Disapproved in Bailey Wringing Mach. Co. v. Adams, Case No. 752.]

In equity. This was a bill in equity filed to restrain the defendants [Alexander Lincoln and others] from infringing letters patent for "improved roller for expressing water from clothes," granted to John Allender, January 11, 1859, assigned to S. A. Bailey, S. S. Cook, and B. M. Cook, and reissued to them June 28, 1864; again reissued November 8, 1864, and again April 18, 1865, and assigned to complainants. [Decree for complainants. For other suits involving the same letters patent, see Bailey Washing Mach. Co. v. Young, Case No. 751; Bailey Wringing Mach. Co. v. Adams, Id. 752; and Eureka Clothes Wringing Mach. Co. v. Bailey W. & W. Mach. Co., 11 Wall. (78 U. S.) 488.]

The claims of the original and the several reissues were as follows:

Original patent:

"I claim a roller I, consisting of a spirally coiled spring J, arranged on a shaft or roller made smallest in the middle (to allow the spring to yield,) covered with India rubber, or some flexible material, that will yield or bend readily, as the spring J yields to the cloth, clothes, or other article being squeezed by the rollers."

---

[1] [Reported by Samuel S. Fisher, Esq., and here reprinted by permission. Merw. Pat. Inv. 108, contains partial report only.]

Reissue of June 28, 1864:

"I. A roller so constructed as to yield more at its center than at or near its ends, in combination with a covering of vulcanized rubber of tubular form, as and for the purpose set forth.

"II. Cog-wheels, in combination with elastic rollers, constructed and used substantially as set forth."

Reissue of November 8, 1864:

"I. A roller so constructed as to yield more at its center than at or near its ends, in combination with a covering of vulcanized rubber, of tubular form, as and for the purpose set forth.

"II. Cog-wheels in combination with vulcanized rubber rollers, or any other elastic substance or compounds impervious to water."

Reissue of April 18, 1865:

"I. A roller made of a spirally coiled spring, arranged on a shaft or roller made smaller at the center than at the ends, as and for the purposes specified.

"II. A roller so constructed as to yield more at its center than at or near its ends, covered with vulcanized rubber, or any other compounds impervious to water, substantially as and for the purpose set forth.

"III. Cog-wheels, in combination with rollers of vulcanized rubber, or any other elastic substance or compound impervious to water, for the purpose set forth.

"IV. Rollers made of or covered with vulcanized rubber, or any other elastic substance or compound impervious to water when used in combination with cog-wheels, and a spring or springs around the shaft or roller, for the purpose set forth.

"V. Rollers for washing or wringing machines made of or covered with vulcanized rubber, or any other elastic substance or compound impervious to water when used in combination with adjusting spring or springs.

"VI. Rollers for washing or wringing machines made of or covered with vulcanized rubber, or any other elastic substance or compound impervious to water when used in combination with adjustable spring or springs, and screw or screws to adjust the pressure to the springs and rollers."

M. E. Ingalls and C. L. Woodbury, for complainants.

M. B. Andrus and Geo. Gifford, for defendants.

LOWELL, District Judge. The complainants are assignees of a patent originally granted to John Allender, of New London, Connecticut, in January, 1859, and three times reissued. This bill is founded on the last reissue, which was granted April 18, 1865, and the earlier reissues have not been given in evidence, and were not in any way connected with this case. The descriptive parts of the specification are precisely the same in this last reissue as in the first patent, but the claims are very different and raise the questions discussed in this case.

The specification declares that Allender has "invented a new and useful roller for squeezing the water, drying liquor, etc., from cloth, clothes, etc.," and proceeds to describe its construction and use. It describes, by reference to drawings, a wringing machine consisting of two rollers fitted with a frame and boxes, and with spiral springs and set screws, to give and adjust the requisite pressure to the rollers, and a guide to conduct the clothes properly between the rollers. Each roller consists of a shaft made smaller in the middle and surrounded by a flat metal spring so as to form a cylinder, and around this "there is a cylindrical covering D, made of India rubber, or some flexible material that will yield or bend readily as the spring cylinder inside of it yields to the pressure of the cloth or clothes passing between the rollers." The patentee gives directions for fastening the cylinder of India rubber, and for gearing the rollers and using the whole. The model which accompanied the original specification is in evidence, and appears to represent a wringing machine, as now usually constructed, excepting the internal construction of the roller.

The only claim in the first patent was for the roller; and the evidence tends to show that it was new and useful. But it seems to have been discovered soon after these machines came into use for wringing clothes, that by putting on the roller a sufficient thickness of India rubber, the spiral spring might be discarded, because the covering would then have all the necessary elasticity. When or by whom the change was made, does not appear; but it does appear that the machine, as so modified, has gone into very general use, and is of very great value, the complainants alone making fifty thousand of them in one year.

If this were the whole case, there would be no injustice or difficulty in holding that the roller of Allender contained the later roller, and that whether the latter were a patentable improvement or not, it was still within the scope of the patent.

But upon the evidence, I must assume that John Young first made an India rubber covering for rollers in wringing machines in 1848, because there is put in evidence a copy of a decree upholding a reissue of his patent, which claimed no less than that, and because one of the complainants' witnesses states the fact to be so, and there is no contradicting evidence. Assuming, then, that rollers covered with India rubber were known at the date of the Allender patent, his original claim was only for an improvement in rollers by putting in the spiral spring.

In the complainants' existing reissued patent, there are six claims, one for the roller, three for combinations not in issue here, and two that are the subject of controversy. No.

5 is, "rollers for washing or wringing machines made of, or covered with, vulcanized rubber or any other elastic substance or compound, impervious to water, when used in combination with adjusting spring or springs." No. 6, the same combination, with the addition of set screws for adjusting the pressure of the adjusting springs. No question is made that the defendants use a combination of rollers covered with India rubber, combined with adjustable springs and set screws; but they deny the validity of the claims: 1st, as being too broad; 2d, as being for a different invention from that of John Allender; and, 3d, for want of novelty.

I agree with much that was said at the argument, of the danger of reissues, to expand the scope of a patent, and bring within its reach subsequent inventions, and the courts should be watchful to guard against such abuses. But much of this criticism is not fairly applicable to the complainants' conduct, because the drawings and model show that Allender had made a working machine which seems to be valuable and to contain all the elements of the wringers now in use; and there is no evidence that any thing claimed in the reissue has been invented since his time, excepting the change in the roller, if that be an invention, by which the spiral spring is omitted.

It does appear to be true that he either did not understand the full value and scope of his machine, or was induced or obliged not to claim it. Taking the strongest view against him, namely, that he was not informed of the peculiar value of India rubber as a covering for the rollers, but thought any flexible material would do as well, or nearly as well, still he points out India rubber as the covering which he considers the best; and no one who should afterward discover its peculiar value, could patent its use in the same combination; and if so, Allender may, by reissue, claim its use in that combination, if he invented it; otherwise it must be held that by describing and not fully claiming it, he has abandoned it, which is precisely what he may avoid by a reissue. As Young had invented a roller covered with India rubber, the respondents insist that Allender in reality invented nothing but an improvement on that roller, which turns out not to be of sufficient importance to be retained in general use, and is not used by them. The complainants contend that the description in the first patent, with the drawings and model, show that although Allender may have thought he invented more than he did in one direction and less in another, yet, in fact, he had combined India rubber covered rollers, with set screws and springs, in a wringing machine, and that made an operative machine, so that, if he had made exactly the claims they now make, he could have held them.

The plaintiffs appear to me to have well maintained their position. Taking the Young roller to be well known, and granting that Allender's improvement on it is not important, yet if he invented the combination of his roller with the set springs and screws, and his roller includes Young's and something more, he may hold its combination as against those who have invented nothing, but have merely put back the Young roller in the place of his. In this point of view, that is, so far as the combination is concerned, the case is not different from one in which Allender had invented the whole roller, as he perhaps thought he had; the defendants could not then have used a roller which contained essential parts of his; and if he invents a combination, they can not use it by merely substituting another well-known part for one of his. So that, if the patent ought to be construed as claiming only a combination of his roller with the other elements, the respondents would infringe by using an old one which operated in the same way to produce a like result in the combination.

The fifth and sixth claims are not open to the criticism so strongly urged against them by the respondents, that they cover not only all materials which were then known as coverings for rollers, but all that may be discovered afterward. They do say "vulcanized rubber, or any other elastic substance or compound impervious to water." In this they copy substantially the reissued patent of Young which has been adjudged valid, and which is for the application of India rubber, or other elastic gum impervious to water, etc. If the claim were for a result by whatever means obtained, or for a process to whatever substance applied, which might be applicable to substances yet undiscovered, it would be too broad; but in patents for machines, it is usual to say that the parts may be made of any suitable materials, and that means known materials; but even if it does not, a person who should afterward discover a new material, would have no right to make the machine, and the inventor is protected against a machine when made of any such material, though the second inventor would have the exclusive right to the new material. In the cases cited, the process or means would be extended beyond the real invention, if they included later discoveries. But a machine is independent of such discoveries. In patents for machines, the patentee by such a phrase intends to point out that the arrangement or combination does not depend on the use of the precise material, where others may serve the purpose.

There arises, however, upon the evidence concerning the state of the art, a serious and difficult question, touching the novelty of the combinations of the fifth and sixth claims. This evidence I have studied with a great deal of care, having read over much of it several times. The English patents of Jessup and Underhill show two inventions which, in combination, would seem to cover the claims in suit here. The former is of

squeezing rollers combined with springs and screws; but the rollers are made of wood, and the latter, assuming wringing machines to be well known, describes a roller covered with India rubber, for use in a wringing machine. Under the recent decision of the supreme court, in Stimpson v. Woodman, 10 Wall. [77 U. S.] 117, as I understand its effect, it would not be invention to combine a known tool with a known machine, if the combination required nothing beyond the ordinary skill of a mechanic, and this would be a fortiori, if the combination had been already suggested. But upon the evidence, I think Allender's invention was earlier than the second of these English patents. Indeed, the preponderance of testimony that way is very considerable, and the witness introduced by the defendants to fix a later date does not fairly contradict those of the plaintiffs on this point. Then there is the Carlock machine used in New York for a considerable time, and to which a very large amount of the evidence applies. It is not shown to my satisfaction that Carlock had any such springs and set screws, or their equivalent, as the patent calls for. The main witness, Mr. Carlock himself, has made so many different statements on the subject that his memory cannot now be relied on, and the other witnesses are met by counter evidence. In a doubtful case of this character, it can not but exercise great influence on the determination that the defendants, through one of their counsel, have obtained possession of this machine since the suit began, and have not produced it. A very ingenious argument was addressed to me to prove that the machine which Carlock sold to Darcey, and which the defendants now have, was a different machine from that which contained these combinations. There is no doubt that Carlock did have two machines, of which the latter in date is admitted not to have contained the elements of this combination; and if the defendants have procured this machine, and any unfavorable inferences are drawn from their not producing it, still the result is only what was before admitted, that this later machine did not anticipate Allender; and the controversy is, whether the former machine did so or not. This is the argument. To this, one obvious answer is, that the defendants, by taking such pains to procure a machine pending this suit, and secretly, admit it to be the machine which was important to be secured. Besides this, the evidence shows clearly that this was the first machine. I need not review the proofs, but will only say that I have considered them with all possible care and have no doubt on this point.

No question of fact was raised about the Day machine. Day had a factory in New Jersey in which he used, before the date of Allender's invention, a washing and wringing machine, with which he squeezed starch out of flat webs of cloth; and this machine had one, and afterward two rollers covered with India rubber, which again was covered with folds of printer's blanket or felt, and over this with folds of muslin. The rollers were combined with blocks of India rubber, to give the pressure, and with wedges to adjust the pressure, and these are undoubtedly the equivalent of the springs and set screws of the reissued patent. The combination operated in a like way to produce a similar result, provided the rollers of the Day machine are the equivalents in construction and operation of the rollers of the patent. A part of the elasticity of the Day rollers, and probably a considerable part, was due to the cloth; and the practical operation of the machine was different in this respect, that the cloth absorbed water and gave it out again at each operation, thus combining washing with wringing, though there is no doubt that the wringing was well done. For a wringing machine, it is of importance to dispense with the cloth, but the question is, whether there could be invention in dispensing with it. I have had much doubt on this point; but, upon the whole, am of opinion that the rollers of the Day machine are different from those of the complainants. They are not covered with India rubber, and I think there might be invention in combining a rubber-covered roller, as Allender did, with the other elements of the Day machine. The India rubber of Day performs the office of the spiral spring of Allender, and if the latter had not covered his roller with India rubber, but with cloth, and had claimed and continued to claim only any flexible covering, he could have held, perhaps, only his peculiar spring; because Day had already covered rollers with cloth, and had a spring of India rubber beneath it; but to substitute an India rubber covering for one of cloth, appears to be important and valuable, and I do not know that it is any less an invention than to substitute a spiral spring for India rubber underneath. I was much pressed with the argument that a person who should merely wind a piece of cloth over the plaintiffs' rollers, would infringe the patent by using the machine in that way; and if so, one who had done the same thing beforehand had anticipated the invention. Here, I think, the true test is, whether the machine is substantially the same. If a piece of cloth or muslin were so tightly stretched over the roller that it remained for practical purposes covered with India rubber, no doubt there would be infringement; but a roller covered with cloth, as distinguished from one covered with India rubber, would not infringe. In this connection the reissued patent clearly claims only coverings impervious to water, and though there is no such claim or intimation in the original patent, yet the model shows such a roller, and its value being discovered as we have already seen, it may be claimed by a reissue.

It was said that the combination should

BAILEY (Case No. 751)                                          [2 Fed. Cas. page 390]

have included the guides. If it had done so, I suppose the defendants' machine would be within it, because that appears to have guides, and I confess to some doubt whether the assignees of the patent would not have done better to include them. But as this case stands, that question is decided when the Carlock and Day machines, neither of which had any guides, are disposed of. If the claim had included the guides, the difficult points connected with those machines would have been avoided.

Decree for complainants.