COVER v. AMERICAN THERMO-WARE CO. et al.

(Circuit Court, N. D. Illinois, E. D. April 25, 1911.)

No. 29,383.

1. PATENTS (§ 21*)—INVENTION—SUBSTITUTION OF MATERIALS.
    The making of a device in whole or in part of materials better adapted to the purpose for which it is used than materials of which those of the prior art were made, and for that reason better and cheaper, unless the mode of operation is thereby changed, does not constitute patentable invention.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 23; Dec. Dig. § 21.*]

2. PATENTS (§ 328*)—VALIDITY—REISSUES—EYE-GUARD.
    The Cover reissue patents, No. 12,924 (original No. 845,696) and No. 12,817 (original No. 850,997), for an eye-guard or goggle, are void (1) as reissues not based on errors in the originals arising through inadvertence, accident, or mistake, (2) as being broadened reissues applied for after the intervention of adverse rights, (3) for lack of patentable invention in view of the prior art, and (4) for anticipation by a prior publication.

In Equity. Suit by Harvey S. Cover against the American Thermo-Ware Company and S. L. Gates. On final hearing. Decree for defendants.

Parker & Carter (Francis W. Parker and Donald M. Carter, of counsel), for complainant.

Joseph L. Levy, Solicitor and of counsel, for defendants.

Jones, Addington, Ames & Seibold, Local Solicitors, for defendants.

KOHLSAAT, Circuit Judge. This cause is before the court on final hearing upon bill alleging infringement of claim 5 of reissue patent No. 12,817, granted June 16, 1908, out of original patent to Cover for an eye-guard, granted April 23, 1907, and numbered 850,-997, and claim 2 of reissue patent No. 12,924, granted March 2, 1909, being the second reissue patent out of patent No. 845,696, granted to said Cover February 26, 1907, for an eye-guard, said claim 2 being identical with claim 2 of the first reissue, No. 12,816, which was granted on June 16, 1908, upon application filed March 23, 1908. The claims read as follows, viz.:

"2. An eye-goggle consisting of two lenses, a flexible piece embodying two lens-holding portions, each consisting of a ring of elastic material adapted to constrictively hold one lens, a flat flexible annular cushion adapted to bear upon the flesh of the wearer about the eye, a thin compressible and elastic tubular flange connecting the ring and cushion and a flexible bridge between the lens-holding portions."

"5. An eye-guard consisting of two lenses, an elastic piece embodying two lens-holding portions, each consisting of a ring of elastic material adapted to constrictively hold one lens, a flat flexible annular cushion adapted to bear upon the flesh of the wearer about the eye, a thin compressible and elastic tubular flange connecting the two flat annular cushions which bear upon the flesh of the wearer."

Primarily, it is insisted by defendants that both claims in suit are void on the grounds: (1) That they and each of them are not based upon errors in the original patent arising through inadvertence, accident, or mistake; (2) that by reason of the delay in seeking the reissue, i. e., about 14 months in the one case, No. 12,817, and more than 14 months in the other case, other rights had intervened; (3) that the reissues are at variance with the subject-matter of their respective original patents; (4) and that the substance of said claim 2 of No. 12,924 is shown in original patent No. 850,997 aforesaid, almost two years prior to the reissue 12,924.

As to the first primary defense, it appears that the inadvertence, accident, or mistake claimed consisted in the ignorance of counsel employed. This excuse is given as a reason for a reissue in all of the reissues, i. e., the ignorance of counsel in procuring patent No. 845,696 was asserted in procuring reissue No. 12,816, and as still existing at the time of making application for the second reissue. There can be no claim that both original patents were not operative devices for what they severally purported to cover. It appears that the reissues were taken out, not to make the device of the original patents operative, but to procure alleged inventions of those patents not claimed at the times of issue—something in addition to what was claimed. To say the least this was an extremely doubtful proceeding on the part of the patentee. It further appears that at the time reissue 12,924 was applied for there was outstanding an agreement between the patentee and third parties whereby Cover on August 24, 1908, granted, subject to certain reservations, an exclusive right to manufacture and sell the products of said reissues Nos. 12,816 and 12,817, which fact is not made to appear in the file wrapper and contents as having been disclosed to the commissioner. While, perhaps, this matter is one for the licensee, or other party affected thereby, to raise, the practice is

not to be commended. Returning to the consideration of the substance of claim 2 of reissues Nos. 12,816 and 12,924, and contracting the one claim of the original patent, No. 845,696, which reads as follows, viz.:

"An eye-guard embodying lens portions each consisting of a solid ring member having an integral annular flange projecting substantially at right angles to the plane of the lens, and gradually tapering in thickness and terminating in a flat, yielding, outwardly-extending cushion which is disposed in a plane substantially parallel with the lens. and an integral bridge-piece connecting the ring members to provide a recess for the nose between the flanges and cushions, substantially as described"

—with said claim 2, it becomes evident that an attempt was made to enlarge the original claim by reissue, both in reissues Nos. 12,816 and 12,924. Complainant does not seek to restrain defendants from infringing the claim of his original patent No. 845,696, which claim is made claim 1 of reissue patents Nos. 12,816 and 12,924, whereby it seems fair to assume that defendants' device does not infringe that claim. The substance of claim 1 of reissue No. 12,924 is all that is covered by the claim, specification, and drawings of patent No. 845,-696. The flexible lens-holding portions "each consisting of a ring of elastic material * * * having a thin compressible and elastic tubular flange," as claimed in the reissue, are substituted for the "solid ring member having an integral annular flange * * * and gradually tapering in thickness" of the original patent No. 845,696, and of claim 1 of the reissue. If there be any novelty in making the substitution, it is not suggested in the specification, drawings, or claim of the original patent. It appears from the testimony of defendant's witness Wolfstein that prior to the application for reissue patent No. 12,816, and therefore prior to the application for reissue patent No. 12,924 in suit, viz., as early as May, 1907, there was on the market in this country a goggle known as complainant's Exhibit American Thermo-Ware Company goggle. This device defendants claim to have been selling ever since 1907. There is no patentable distinction between the device of claim 2 of reissue patent No. 12,924 and said Thermo-Ware goggle. If this be true, then, as defendants' counsel say, this exhibit may have suggested the necessity of the reissue.

It hardly seems possible to bring claim 2 in suit within the requirements of the rule laid down in the cases of Parker & Whipple Co. v. Yale Clock Company, 123 U. S. 95, 8 Sup. Ct. 38, 31 L. Ed. 100; Miller v. Brass Co., 104 U. S. 350, 26 L. Ed. 783; Mahn v. Harwood, 112 U. S. 354, 5 Sup. Ct. 174, 6 Sup. Ct. 451, 28 L. Ed. 665; Dobson v. Lees, 137 U. S. 265, 11 Sup. Ct. 71, 34 L. Ed. 652; and General Electric Company v. Richmond Street & Interurban Railway Company, 178 Fed. 84, 102 C. C. A. 138. Can it be said that there was inadvertence, accident, or mistake in the original patent, or that the one claim thereof discloses an inoperative device, or that the reissue in suit does not expand rather than narrow the claim, or other rights did not accrue prior to the applications for the two reissues of patent No. 845,696? The same may be said as to reissue patent No. 12,817. The only difference between the two reissues in suit consists in the place of attachment of the bridge. In No. 12,924 this connects the lens-holding portions; in No. 12,817, it connects the two flat

annular cushions. In each case, of course, the ears or tabs to which the holding bands are attached must align with the points of attachment of the respective bridges. This difference obtains in the two original patents, Nos. 845,696 and 850,997. Reissue patent No. 12,-817 differs from original patent No. 850,997 in that it too does away with the thick rubber walls of the lens-holding members, which taper to the cushion and substitute a thin compressible and elastic tubular flange connecting the ring and cushion.

Assuming, however, that the reissues were granted in accordance with the statute and the several decisions construing it, do they con-stitute invention in view of the condition of the prior art.

As early as 1896, a British patent, No. 23,095, was granted to Morris and Wilson for an eye-protector in which fine gauze was used in place of a lens. "Hitherto," say the inventors, "glass goggles have been generally used for this purpose, but these have been liable to break and become useless. We substitute for this glass, fine metallic gauze which is fitted and secured in rings made of vulcanite or other suitable material, these rings being attached in any suitable manner to a band of India rubber or other fabric for holding the eye-protectors securely to the wearer's head." The vulcanite rings are shown to be concave, as is also the wire gauze, forming somewhat of a dome. The drawings show a one-piece web of rubber or other flexible fabric composing the frame and bridge, the bridge being connected between the ring or lens-holding members and the ears being in alignment therewith. Substituting rubber as one of the suitable substances mentioned in the patent, we have a goggle very closely resembling the devices in suit, though the method for securing the lens is not made plain. The lens held constrictively by means of slots or grooves in soft rubber are shown in the Crofutt patent, No. 152,215, dated June 23, 1874.

A comparison of the structure described in the claims in suit with the devices of the prior art shows that any novelty to which the Cover device might lay claim must rest entirely upon the qualities of the material used in its construction. In other words, strike out of the claims "flexible," "elastic," constrictively," "compressible"—words which describe soft rubber (the only material having these qualities practicable for the use described, of which we have any knowledge)—and there remains nothing in the claims patentably differentiating the Cover goggle from Morris & Wilson British patent, No. 23,095, dated October 31, 1896; Genese patent, No. 295,242, dated March 18, 1884; Pozdena patent, No. 476,486,, dated June 7, 1892; and many others. In making this statement, the court does not overlook the fact that the words "flat" and "annular" would remain in the claim, nor that the words " * * * piece embodying" would imply integrality. But flatness of the cushion would be a demerit rather than a merit (see, for instance, the Morris & Wilson flat vulcanite rings) were it not for the flexibility and elasticity of the soft rubber used in the construction of the goggle. Annularity does not distinguish the cushions from those of the prior art. Indeed, both flatness and annularity are found in the Morris & Wilson British patent, No. 23,095, supra. And that annular eye-pieces or cushions are a perfectly obvious departure from

the oval or other shaped cushions of the art is evidenced by the statement of the Morris & Wilson specification that:

"The metallic gauze A could be cut either in a round shape as shown in the drawing or in an oval or eye shape, whichever was found to be most suitable and convenient, the rings of vulcanite or other suitable material B for holding the gauze being of the necessary shape and section."

The integrality implied in the word "piece" is a result of the use of soft rubber, because soft rubber is the only material practicable for this purpose and having the other qualities called for by the claim, which can be moulded.

If the claims should be sustained as valid, it would be impossible (unless the doctrine of equivalents is to be absolutely ignored) for a manufacturer of an all rubber goggle of any sane shape to escape a charge of infringement. It therefore seems a fair conclusion that what the claims attempt to cover, and what they were intended to protect, was the idea of making a goggle entirely of soft rubber.

[1] The law is well settled that the making of a device, in whole or in part of materials better adapted to the purpose for which it is used than materials of which the old one is constructed, and for that reason better and cheaper, cannot entitle the manufacturer to a patent. "It may afford evidence of judgment and skill in the selection and adaptation of the materials in the manufacture of the instrument for the purposes intended, but nothing more." Hotchkiss v. Greenwood, 11 How. 248, 13 L. Ed. 683. The substitution of a "new material discovered by the substitutor does not affect the identity of a machine unless its mode of operation is thereby changed." Bailey Washing Machine Co. v. Lincoln, 4 Fish. Pat. Cas. 379, Fed. Cas. No. 750. Even the fact that the material substituted was never before used for the same purpose is of no consequence. Rushton v. Crawley (1870) L. R. 10 Eq. 522; Jordan v. Moore, L. R. 1 C. P. 624.

In the case at bar, Cover was by no means the first to conceive of the advantages of the use of soft rubber in goggle construction. The Morris & Wilson British patent, No. 23,095, utilized the flexibility of soft rubber almost to the same extent as did Cover. The bridge-piece (upon which the fitting of the face so largely depends) is as flexible as that of Cover's device, and one lens portion can be folded upon the other, either in forward or backward position as readily as can that of the patent in suit. Construct the Morris & Wilson rings of soft rubber (which is surely within the purview of the patent as a "suitable material"), and it is believed nothing more than colorable differences remain to distinguish it from the construction of the patent in suit. It is true the compressibility of the tubular flange of the patent in suit would be absent on account of the thickness and heaviness of the Morris & Wilson rings; but it requires only a careful examination and trial of the Cover goggles to demonstrate that this tubular flange would perform its function just as well if made of noncompressible material, for its compressibility is not called into play in the use of the goggles. Even when folded as shown in Figure 4 of patent No. 12,924, it is seen that the compressibility of the tubular flange is not utilized.

"Soft and flexible india rubber" is the material mentioned in the Crofutt patent, No. 152,215, dated June 23, 1874, for construction of "eye and lung protectors" of that patent. This is also true of the Pozdena patent and the Genese patent heretofore cited.

The principal value of soft rubber in this art rests, as it does in numerous other arts, upon the fact that the material can be molded, and thus the article made in one piece. This, perhaps, makes a cheaper and more durable article, and consequently a better seller; but these results flow, not from a new combination of elements, but from the skill and judgment of the manufacturer in selecting the material.

There has been introduced in evidence on behalf of defendant a book entitled "Bareme Universal Rozard," being an instruction manual for the use of metal workers, and containing principally lists of tables showing how screw threads should be cut. This book has been shown to have been published in Paris, France, in 1903, some 2,000 volumes having been printed, and to have been immediately placed within reach of the general public by being deposited in the National Library at Paris, as well as by being sold by its compiler to booksellers and by them distributed to the general public. Next to the last page of this publication appears an advertisement illustrating and clearly disclosing an all rubber goggle varying only in the most insignificant details from the goggle illustrated in Figure 2 of patent No. 12,817. From printed matter accompanying the illustration, the goggle is described as being made entirely of black rubber and being therefore very flexible, and by reason of its elasticity permitting the instantaneous replacing of the eyeglasses. Cover does not attempt to carry his invention back of September, 1904, and the disclosure of this advertisement seems to constitute such a publication as should have precluded the granting of the Cover patent.

[2] The court is therefore of the opinion: (1) That the letters patent in suit are void as reissues because not based upon errors in their originals arising through inadvertence, accident, or mistake; (2) that they are void as being broadened reissues applied for after the intervention of adverse rights; (3) that in view of the prior art the claims in suit do not disclose patentable invention; (4) and that, even if invention be assumed, the patents should not have been granted because the subject-matter thereof was described in a printed publication before applicant's invention or discovery thereof.

The bill may be dismissed for want of equity.