TRUBENIZING PROCESS CORPORATION
v. JACOBSON et al.

CELANESE CORPORATION OF AMERICA
v. ESSLEY SHIRT CORPORATION.
Inc.

District Court, S. D. New York.
Dec. 20, 1937.

Kenyon & Kenyon, of New York City (Douglas H. Kenyon, Frederick Bachman, Cecil B. Ruskay, and Lester F. Dittenhoefer, all of New York City, of counsel), for plaintiff Trubenizing Process Corp., and for defendant Essley Shirt Co., Inc.

Cooper, Kerr & Dunham, of New York City (Drury W. Cooper and Thomas J. Byrne, both of New York City, of counsel), for plaintiff Celanese Corp. of America.

Jacob T. Basseches, of New York City, for defendants F. Jacobson & Sons.

COXE, District Judge.

These two suits for patent infringement are closely interwoven, and have been for that reason tried together. The first suit is brought by the Trubenizing Process Corporation against F. Jacobson & Sons, a copartnership, for infringement of the two Liebowitz patents, Nos. 1,968,409, and 1,968,410, for apparel, both issued July 31, 1934. The defendants in that suit hold licenses under three patents held by the Celanese Corporation, the plaintiff in the second suit, and these three patents are, with a large number of others, relied on as anticipations of the Liebowitz patents. The second suit is by the Celanese Corporation against Essley Shirt Company, a licensee of the Trubenizing Corporation, the plaintiff in the first suit, for infringement of the Woodman & Dickie patent, No. 1,716,255, issued June 4, 1929, for fabric or material; the Dreyfus patent, No. 1,828,397, issued October 20, 1931, for stiffening fabric; and the Dreyfus patent No. 1,903,960, issued April 18, 1933, for fabric and sheet material.

The usual defenses of invalidity and lack of infringement are asserted in both cases.

The first Liebowitz patent, No. 1,968,-409, is stated to relate to articles of wearing apparel. The drawings show a loosely woven fabric or net work of cellulose acetate threads inserted between two layers or plies of textile fabric. According to the specification, this assembly is stiffened and bound together by moistening with acetone or other suitable solvent which will peptize the cellulose ester threads. In the preferred method, the plies are placed between two pads wet with solvent, and pressure is applied; then heat and further pressure are applied, with the result that the solvent is driven off. It is stated that the adhesive binder does not form a continuous film, but has open spaces which make the laminated fabric pervious both to air and water. The important advantage asserted is that the collar or other article of apparel can be fabricated by usual methods and the stiffening treatment applied after the stitching operations are completed.

The claims relied on are Nos. 2, 3, 4, 7, 9, 10, and 11. Claims 2, 3, 4, 10, and 11 are product claims, and claims 7 and 9 method claims. Claim 3 is typical of the product claims, and reads:

"3. A moisture permeable stiffened article of apparel comprising two or more plies of textile fabric having their opposed faces adhesively united with a binder of cellulose derivative elements arranged to provide open spaces between said elements."

Claim 2 describes the cellulose derivative threads as being "spaced relatively to each other a distance greater than the thickness or diameter of each thread." Claim 4 describes the cellulose derivative threads as being "disposed in intersticed arrangement." Claims 10 and 11 describe the acetate threads as being "spaced sufficiently closely" so that the pattern will not be apparent on the surface of the article. Claim 7 is typical of the method claims, and reads:

"7. The method of making a stiffened article of apparel which comprises applying a fabric comprising cellulose derivative threads between the opposed faces of two plies of textile fabric, treating the laminated fabric with a solvent adapted to peptize the cellulose derivative threads, and applying pressure and heat to unite and stiffen the plies."

The second Liebowitz patent, No. 1,968,410, is described as an improvement of the first patent. This improvement consists in interweaving the cellulose acetate threads in the ordinary lining fabric of the material. In Fig. 2 these acetate threads are shown as each third thread in the warp. It is stated, however, that although the particular example illustrated shows the cellulose derivative yarn only in the warp, it may be used both in the warp and the filler, or in the filler alone.

The claims relied on are Nos. 1, 6, 7, 8, and 10; of these, Nos. 1, 6, 7, and 10 are product claims, and No. 8 is a process claim. Claim 10 reads:

"10. A moisture pervious article of wearing apparel comprising plies of fabric stiffened and adhesively secured together by an intermediate layer of textile lining material having cellulose derivative threads interwoven therewith."

The process claim 8 is as follows:

"8. The process of cementing fabric parts of an article of apparel which comprises disposing between the parts to be

cemented a piece of fabric woven with yarn made of a cellulose derivative substance, applying to said parts, from the outside, a solvent which will penetrate through the fabric and make the cellulose derivative substance cementitious, and applying pressure to bind the parts together."

The Woodman & Dickie patent, No. 1,716,255, concerns the treatment of a single ply of material to make it waterproof or gas proof. According to the description, fabrics made of thermoplastic yarns or threads composed of filaments or fibers consisting or having a basis of cellulose acetate or other cellulose derivatives, or such fabrics mixed with silk, cotton, wool, or other fibers, are subjected to heat and pressure, with or without the use of plasticizing or softening agents or solvents thereby producing a greater or less melting effect on the filaments or fibers of the cellulose derivative or derivatives by the action of the heat and pressure, so that the pores or interstices of the fabric are reduced to extremely minute dimensions, or closed completely. It is also pointed out that the extent of the melting effect, and the degree of closing the interstices of the fabric, will vary with the degree of heat and pressure employed, and with whether or not plasticizers or softeners or solvents are used. The claims relied on are Nos. 1, 2, 3, 7, 8, and 9, and all of these are process claims.

The Dreyfus patent, No. 1,828,397, relates to a stiffening fabric suitable for use in the making of garments. The stiffeners formerly in use are stated to have been made of wool, cotton, or the like, reinforced or not by stiffer material such as hair. These were objectionable because they were bulky and apt to soften when damp. In one of the methods disclosed, a mixed fabric containing organic derivatives of cellulose is treated with a material tending to stiffen it. The treating material is described as solvents, softening agents, or swelling agents. The claims relied on are Nos. 1 and 2, both process claims.

The Dreyfus patent, No. 1,903,960, is described as relating to the manufacture of new fabrics or sheet materials having waterproof to gas-proof properties or capable of other applications. According to the description, a fabric or sheet material is made by uniting under appropriate conditions of temperature and pressure a fabric composed of or containing filaments or fibers of thermoplastic derivatives of cellulose with a fabric composed of or containing filaments or fibers of non thermoplastic or relatively non thermoplastic material. The specification states that a fabric made of yarns composed of filaments or fibers of a thermoplastic cellulose derivative, such for example as cellulose acetate, ethyl-, methyl-, or benzyl-cellulose, or mixtures of such cellulose derivatives, is associated with a fabric made wholly or partly of yarns composed of filaments or fibers of a non-thermoplastic or relatively non-thermoplastic material, such for example as silk, cotton, linen, and the associated fabrics subjected to heat and pressure, with or without employment, assistance, or application of plasticizing or softening agents or solvents of the thermoplastic cellulose derivative or derivatives; and in this way the fabrics are united together and a composite sheet material is obtained in which the pores or interstices are reduced to extremely minute dimensions, or closed completely, by the melting or softening effect produced by the heat and pressure upon the filaments and fibers of the thermoplastic cellulose derivative or derivatives, and by the uniting of the fabrics under the heat and pressure. It is further stated that the extent of the melting or softening effect, degree of closing the pores or interstices, and intimacy of union of the fabrics, "and therefore the degree of impermeability of the compound fabric or material produced, can vary with the degrees and duration of heat and pressure employed, and with whether plasticizers, or softeners or solvents are employed"; also, that "the degrees and duration of heat and pressure are interdependent and that all or any of these conditions may be varied according to circumstances or requirements." The patent contemplates that fabrics consisting wholly of cellulose acetate yarns, or mixed fabrics containing both cellulose acetate yarns or filaments, and yarns or filaments of silk, cotton, and the like, may be used. The particular purpose which the inventor had in mind was to make a material where resistance to penetration by water or gases is desired, such as waterproof materials for garments, or as materials for airships or other gas containers, but it is stated that it may be used for other "technical and industrial applications." The claims relied on are Nos. 2 and 4, both being product claims.

The two Liebowitz patents will first be considered. These patents have been used entirely in connection with the manu-

facture and sale of semi-soft collars attached to men's shirts. The Trubenizing Corporation holds title to both patents but does no manufacturing of its own; it is engaged mainly in licensing others to operate under the patents; and it has extensively advertised the patented collar under the name "Trubenized." The Essley Shirt Company is owned by the Liebowitz family, and, under license from the Trubenizing Corporation, produces shirts with the Trubenized collar attached. These collars were first placed on the market in 1934, and since that time the sales have greatly increased and are still steadily mounting.

It is insisted by the Trubenizing Corporation that Liebowitz was the first to make a semi-soft fused collar requiring no starching and permeable to moisture. The patents are not, however, limited in their application to collars. They are expressly stated to relate to apparel; many of the claims are specifically drawn to cover an article of apparel; and the entire disclosure is directed to the production of a composite fabric or material capable of varied use in the textile and kindred fields. The patents are, therefore, to be judged not alone by reference to the collar art, but also on a consideration of the entire art relating to such fabrics or materials.

The first Liebowitz patent, No. 1,968,409, shows an intermediate lining of cellulose acetate threads placed between two outer layers or plies of textile fabric. These acetate threads are spaced apart sufficiently to prevent them from filming over, and thus filling or closing the spaces, when treated with a solvent. The assembly is treated with acetone or some other suitable solvent, and heat and pressure are applied, as a result of which the solvent is driven off. The patent points out that a preferred method of performing this cementing operation is to place the assembled plies between two pads wet with the solvent and apply pressure, after which heat and further pressure are applied. The second Liebowitz patent, No. 1,968,410, merely substitutes for the lining of cellulose acetate threads, shown in the first patent, a lining having one thread of cellulose acetate yarn alternating with two threads of cotton yarn in the warp.

The thermoplastic properties of cellulose acetate yarns have long been known. It has also been well known for many years that such yarns will soften and become adhesive under the influence of heat and pressure. Plasticizers, softeners, and solvents have also commonly been applied as softening or binding agents, and the effect of using any of these for a particular purpose has been thoroughly explored and is well understood.

The prior references show numerous examples of waterproof cloths, stiffeners, sheet materials, and the like produced from cellulose acetate fabrics. Some of these proceed from a single fabric base composed entirely of cellulose acetate yarns; others from a composite fabric containing a mixture of both cellulose acetate threads and threads of other kinds; and still others from a plurality of fabrics in one or some of which cellulose acetate yarns or filaments are present. Kennedy, No. 590,842 (1897) has much the same mixed thread arrangement which is found in the second Liebowitz patent No. 1,968,410.

But concededly the best reference to both Liebowitz patents is Dreyfus, No, 1,903,960, which is one of the patents in suit in the Celanese case. This patent teaches the making of composite sheet material by uniting under heat and pressure a plurality of fabrics by means of cellulose acetate or other thermoplastic derivative of cellulose present in the form of yarns or filaments. The patent specifies that this may be done with or without the assistance of "plasticizing or softening agents or solvents"; it points out also that "the extent of the melting or softening effect, degree of closing the pores of interstices, and intimacy of union of the fabrics, and therefore the degree of impermeability of the compound fabric or material produced, can vary with the degrees and duration of heat and pressure employed, and with whether plasticizers or softeners or solvents are employed." I think this is a complete disclosure of what Liebowitz does in his patents. There is the same use of a mixed fabric containing cellulose acetate threads, the same use of a solvent to soften and bind the material, and the same application of heat and pressure. The only difference is that Dreyfus produces a relatively impermeable material and Liebowitz makes his pervious or porous. This is a refinement which any one skilled in the art was fully qualified to perform; and, as Dreyfus himself indicates, it depends on the spacing of the threads, the degrees and duration of heat and pressure employed, and with whether plasticizers, or softeners or solvents are used. I do not think, there-

678

fore, that either Liebowitz patent discloses invention.

 The three patents involved in the Celanese case remain for consideration. Woodman & Dickie, No. 1,716,255 (1929) shows the treatment, by well-recognized methods, of a single fabric composed of or containing filaments or fabrics of cellulose acetate or other cellulose derivatives, to produce waterproof or gas proof material. It is difficult to see how this constituted any advance in the art. But in any event, there is no infringement, for the Essley Shirt Company works with a plurality of fabrics and not merely by treating a single fabric. The Dreyfus patent, No. 1,828,397, is for a stiffening fabric for garments; it clearly discloses no novelty over Lund, No. 1,720,795 (1929), Lehner, No. 713,999 (1902), and Kennedy, No. 590,842 (1897); and it is not infringed.

The Dreyfus patent No. 1,903,960 has already been fully described. Has this patent been infringed by the Essley Shirt Company? I think not. The only claims in issue are Nos. 2 and 4, and both of these are product claims. Claim 2 is the broader of the two, and reads as follows:

"2. A composite sheet material comprising a plurality of fabrics, at least one of which contains yarns comprising a thermoplastic derivative of cellulose, which fabrics have been united into a single sheet of relatively increased impermeability by the application of heat and pressure."

When the application for this patent was before the patent office, it contained process as well as product claims. The process claims were rejected as not patentable; and this decision was, on appeal to the Board of Appeals, affirmed. The patentee thereupon canceled the process claims, leaving only the product claims. It also appears that in the application as originally filed claims identical with claim 2 as issued were included, except that they did not contain the words "of relatively increased impermeability." These claims were rejected, and the patentee thereafter added the words "of relatively increased impermeability." These words thus became a definite limitation in the claims as issued, and the patentee is in no position to urge to the contrary now. Catalin Corp. v. Catalazuli Mfg. Co., 2 Cir., 79 F.2d 593. Clearly, the material manufactured by the Essley Shirt Company is not "of relatively increased impermeability"; it is rather a material which is permeable not only to air but to moisture. The Essley Shirt Company does not for that reason infringe.

There may be a decree in the Trubenizing case holding claims Nos. 2, 3, 4, 7, 9, 10, and 11 of the Liebowitz patent, No. 1,968,409, and claims Nos. 1, 6, 7, 8, and 10 of the Liebowitz patent, No. 1,968,410, invalid for lack of invention, and dismissing the complaint with costs; and a further decree in the Celanese case holding claims Nos. 1, 2, 3, 7, 8, and 9 of the Woodman & Dickie patent No. 1,716,255, claims Nos. 1 and 2 of the Dreyfus patent No. 1,828,397, and claims Nos. 2 and 4 of the Dreyfus patent No. 1,903,960, not infringed, and dismissing the complaint in that case with costs.