## TRUBENIZING PROCESS CORPORATION v. JACOBSON et al.

### No. 342.

Circuit Court of Appeals, Second Circuit.

Aug. 23, 1938.

Kenyon & Kenyon, of New York City (Merrell E. Clark, Douglas H. Kenyon, Frederick Bachman, Cecil B. Ruskay, and Leon Lauterstein, all of New York City, of counsel), for appellant.

Drury W. Cooper, Thomas J. Byrne, and Jacob T. Basseches, all of New York City, for appellees.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The plaintiff owns two patents which were granted on the applications of Benjamin Liebowitz assigned to it. They are patents No. 1,968,409 and 1,968,410 for Apparel and were both issued on July 31, 1934. The applications were filed, on April 5, 1932, for the first patent and on May 31, 1933, for the second which covers a so-called improvement. Though the parties are nominally different, the same interests are conducting the litigation as in

the suit of Celanese Corporation of America v. Essley Shirt Company, Inc., 2 Cir., —— F.2d ——, which was heard on appeal with this one and will be decided in a separate opinion filed herewith. For the opinion below in both cases, see Trubenizing Process Corporation v. Jacobson, D.C., 21 F.Supp. 674.

The plaintiff is in the business of granting licenses under its patents to collar and shirt manufacturers for whose use the patented product was especially designed. It is a composite material made of two pieces of cloth fused together by placing between them another piece made wholly or in part of threads of a cellulose derivative, then softening those threads with a solvent and pressing the heated material together to make usually a three-ply cloth that will not easily wilt and wrinkle when made into a shirt collar. This composite cloth is water-permeable and air-permeable since the cellulose derivative is not introduced in the middle ply in sufficient quantity to run together under the effect of the solvent and heat and pressure applied. That leaves spaces in the collar which are in effect concealed holes that block the passage of air and moisture only so much as the threads of the textile fabric used will do that. The result is a good looking, comfortable collar easily made of material matching the shirt to which it may be attached, either permanently or otherwise, that has what has been called "starchless stiffness" and in addition to its other desirable qualities requires no especial weave but may be made of practically any cloth suitable for use in making shirts.

This composite material has gone into widespread use and apparently well deserves the praise plaintiff's counsel has lavishly heaped upon it. But whether the claims in suit cover a patentable invention remains to be seen.

Patent No. 1,968,409 in its specifications shows that an object of the claimed invention is "to provide a porous moisture permeable stiffened or partly stiffened article of wearing apparel, which is of such a character that it may be laundered repeatedly without deleteriously affecting its stiffening properties". And that it "is particularly suitable for use in the production of collars of the semi-soft or soft roll type". The patentee said: "According to my invention, I attain this purpose by stiffening the fabric with artificial threads employing cellulose as a base or initial basic material, such as celanese, acele or the like. A distinguishing feature of the invention is that the threads are spaced apart, relatively to their thickness or diameter, sufficiently to prevent them from filming over, and thus filling or closing the spaces, when the threads are peptized or treated with a solvent." After the plies have been put together as above indicated the patentee says:

"The assembly is then stiffened and bound together by moistening with acetone or other suitable solvent which will peptize the cellulose ester threads. A preferred method of doing this is to place the plies between two pads wet with the solvent and applying pressure. Heat and further pressure is then applied, as a result of which the solvent is driven off. The cellulose ester remains behind no longer as a fabric, but as a checkered structure, partly dispersed into the adjoining fabric plies, which checkered structure adhesively binds the plies together and stiffens them. It is to be noted that in the practice of my invention the adhesive binder does not form a continuous film but has open spaces which make the laminated fabric pervious both to air and water."

Product claims 2, 3, 4, 10 and 11 of this patent are now relied on. Of these 3 and 10 are typical. They read:

"3. A moisture permeable stiffened article of apparel comprising two or more plies of textile fabric having their opposed faces adhesively united with a binder of cellulose derivative elements arranged to provide open spaces between said elements."

"10. An article of apparel comprising plies of textile fabric united by a discontinuous adhesive layer, the discontinuities whereof are spaced sufficiently closely so that their pattern will not be apparent on the surface of the article."

Process claims 7 and 9 in suit are well enough shown by 9 which reads:

"9. The method of making a semi-soft collar which consists in forming a complete collar comprising outer and inner plies of textile fabric and an intermediate ply comprising cellulose derivative threads, wetting complete collar with a solvent which will peptize the cellulose derivative threads and applying heat and pressure to unite and stiffen the plies."

The second patent, No. 1,968,410, adds merely a so-called improvement sometimes

called "spot cementing" obtained by making the ordinary lining ply partly of cellulose acetate threads; the preferred form being to have every third warp thread made of cellulose acetate, the remaining thread both warp and weft being of cotton or other textile material.

Product claims 1, 6, 7 and 10 of this patent are in suit. Claim 10 is typical and reads:

"10. A moisture pervious article of wearing apparel comprising plies of fabric stiffened and adhesively secured together by an intermediate layer of textile lining material having cellulose derivative threads interwoven therewith."

The only process claim of this patent, No. 8, which is in suit differs for the most part from the process claims of the first patent in the same respect. It reads:

"8. The process of cementing fabric parts of an article of apparel which comprises disposing between the parts to be cemented a piece of fabric woven with yarn made of a cellulose derivative substance, applying to said parts, from the outside, a solvent which will penetrate through the fabric and make the cellulose derivative substance cementitious, and applying pressure to bind the parts together."

We do not stop to consider whether the second patent differs sufficiently from the first to avoid the contention that it is void because of what is called double patenting. See Miller v. Eagle Manufacturing Company, 151 U.S. 186, 14 S.Ct. 310, 38 L.Ed. 121. The District Judge decided rightly that all the claims in suit are invalid for lack of patentable invention. Nor need one look beyond the Dreyfus Patent No. 1,903,960, which is involved in the companion suit already mentioned, to find ample justification for this statement. It is clearly prior art and while the primary aim of the inventor was to make a composite cloth less permeable to water and gas than were its component parts before processing and was allowed claims so limited, his specifications were broad enough to cover all Liebowitz later disclosed as his invention except the additional use to which Liebowitz showed the material could advantageously be put. Dreyfus cemented his plys together as did Liebowitz and showed how the finished material would be more or less impermeable to water or gas by using as the cementing agent a fabric made wholly of a cellulose derivative and applying greater heat and pressure with the solvent or omitting the solvent, applying less heat and pressure, and using what he called a mixed fabric for the cementing agent. He described such a fabric as one "consisting of a mixture of thermoplastic yarn with yarns of silk, cotton, linen, artificial silk of the cellulose type, wool or other nonthermoplastic fibers or filaments, or consisting of or comprising yarns composed of a mixture of thermoplastic fibers or filaments". And after saying that, he pointed out that varying the starting materials and the use of solvent and heat and pressure would "form a compound material possessing greater or less degrees of resistance to penetration by water or even gases, according to the temperature, pressure and duration of pressure or other conditions". Liebowitz chose to make his product in the Dreyfus way which would give it qualities of permeability desirable in material to be used mainly for making shirt collars. We agree with the trial judge that that did not require the use of the inventive faculty.

His patents are not confined to semi-soft collars as the product claimed but some of his claims cover broadly "a moisture permeable stiffened article of apparel". In so far as he dealt with the composite sheet material out of which his articles of apparel were to be made, he invented nothing after Dreyfus. His possible field of invention lay in the adaptation of the Dreyfus material to the making of articles of apparel. But even there all he did was to take the preferred form of Dreyfus cloth and make it into a semi-soft collar, or other article of apparel, in the usual way such things had been made with other materials. There was neither new material nor a new combination of old materials. So there was no adaptation of anything but merely the substitution of one kind of cloth for other kinds of cloth in making semi-soft collars or articles of apparel generally. Ordinarily the use of one well-known kind of material instead of another in making an old article of manufacture in an old way does not amount to invention even though a superior product is obtained. Gardner v. Herz, 118 U.S. 180, 6 S.Ct. 1027, 30 L.Ed. 158; Florsheim v. Schilling, 137 U.S. 64, 11 S.Ct. 20, 34 L.Ed. 574; Strom Mfg. Co. v. Weir Frog Co., 6 Cir., 83 F. 170; Cover v. American Thermo-Ware Co., C.C., 188 F. 670; Ferris v. Batcheller, C.C., 70 F. 714. There must be in addition to such substi-

902

.tution of materials some new and unexpected result as evidence of invention to sustain a patent. Archer v. Imperial Mach. Co., 2 Cir., 207 F. 81. Here that was lacking. The characteristics of the Dreyfus cloth were known. It was plain enough that any article of apparel, a semi-soft collar for example, made of it would have those characteristics imparted to it. Liebowitz simply used the cloth and got the expected result without, however, doing more than any good maker of articles of apparel would have done when using the same cloth. And so, while his collar may be the result of skill in the calling it did not take inventive thought to make it.

Some emphasis has been put upon commercial success. A large number of semi-soft collars have been made and sold by licensees under the patents in suit and a large number have also been made and sold by licensees under the Dreyfus patent. The largest manufacturer licensed under the patents of Liebowitz is also licensed under the Dreyfus patent. But collars are made and sold in large numbers anyway and where extensive advertising is used to push such a thing commercial success does not point with real assurance to invention. Hewes & Potter v. Meyerson, 2 Cir., 64 F.2d 336. Moreover, it is only where invention is doubtful that such a consideration may be resorted to in support of it. De Forest Radio Co. v. General Elec. Co., 283 U.S. 664, 51 S.Ct. 563, 75 L.Ed. 1339; Kissock v. Duquesne Steel Foundry Co., 3 Cir., 37 F.2d 249.

We, therefore, hold all the claims in suit invalid.

Decree affirmed.

L. HAND, Circuit Judge (dissenting).

I agree that Liebowitz's contribution to the art was not—as he himself supposed—inventing the fabric which he disclosed, but selecting one grade of Dreyfus's fabric to make a pervious, "semi-soft" collar. Most of the claims in suit go further than this, and are for "articles of wearing apparel" generally. I shall not try to separate the good from the bad, because we are holding that the whole invention is invalid, and that includes claim nine, of Patent No. 1,968,-409, which is strictly a collar claim. That claim at least is valid if it required invention to make that contribution which I have just mentioned. My brothers do concede, and I agree with them, that there

can be invention in the mere substitution of a new material, but they believe that in this case the substitution was obvious and therefore required no invention. To decide that question we are really obliged to resort to a fiction, because Liebowitz did not consciously substitute Dreyfus's fabric in a collar; he invented it himself. Because Dreyfus invented it first, we have got to say whether it would have been an invention to make that substitution, if Liebowitz had made it. I speak of one "grade" of Dreyfus's fabric, because he was primarily after garments in which the cellulose threads should melt together to form sheets impervious to water or gas. It is only because he impliedly included those in which the threads did not so completely melt, that his disclosure could be an anticipation at all.

If we were free to impute to the art at large the same knowledge of Dreyfus's Canadian and English patents that the statute imputes to Liebowitz, the inference in favor of validity would be irresistible. The collar art was literally strewn with efforts to make "semi-soft" collars: all sorts of contrivances had been tried, and few succeeded; nothing like Liebowitz's collar had appeared, and it had an immediate and a great success when it did. All the conventional determinants of invention would therefore have existed: a long unsatisfied demand; the means to supply it, existing for over six years alongside that demand and available to all; many earlier failures to supply the demand; great and immediate success attending the new invention. However, there is no evidence that the art in fact knew of Dreyfus's patents, or of any use made of his fabric, if indeed there was any: for all that appears they may have lain unnoticed. Yet even though we charge nobody but Liebowitz with knowledge of the Dreyfus fabric, I think that this supposititious act of selection was an invention. As I have said, Dreyfus was primarily after a waterproof garment—even a gasproof one—and a garment obviously ought to be as pliable as possible. Therefore a person reading his disclosure would be led to regard it as useful for waterproof cloth: something pliable and impervious. Liebowitz wanted exactly the opposite qualities in his collar: it must be stiff enough to hold its form and it must be pervious to water. These being the characteristics he was in search of, if he had seen Dreyfus's disclosure it seems to me that he would have turned

away from it, rather than have been led to adopt it. To observe that the fabric there disclosed might be used for a "semisoft" collar, if one took care not to let the cellulose threads melt into a solid sheet, and to select that grade of it in which they did not, for a use wholly foreign to any of its declared uses, seem to me an authentic invention, and an exceedingly meritorious invention. Indeed, I could not very well hold otherwise, for the case is indistinguishable from my decision in Van Heusen Products, Inc., v. Earl & Wilson, D.C., 300 F. 922.